1 | BENJAMIN B. WAGNER
United States Attorney
2 | PAUL A. HEMESATH
Assistant United States Attorney
3 | 501 I Street, Suite 10-100
Sacramento, CA 95814
4 | Telephone: (916) 554-2700
Facsimile:  (916) 554-2900
5

**FILED**

JUN 2 4 2016

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

6 | Attorneys for Plaintiff
United States of America
7

8 | IN THE UNITED STATES DISTRICT COURT

9 | EASTERN DISTRICT OF CALIFORNIA

10 |

UNITED STATES OF AMERICA,

11 |                              Plaintiff,

12 |                 v.

13 | HARMINDER PHAGURA,

14 |                              Defendant.

15 |

*GEB*

CASE NO. 2:15-CR-00095-~~MCE~~

PLEA AGREEMENT

DATE:
TIME:
COURT:

16

17 | **I.     INTRODUCTION**

18 | **A.     Scope of Agreement**

19 | The indictment in this case charges the defendant with violations of 21 U.S.C. § 841(a)(1) –

20 | Conspiracy with Intent to Distribute Cocaine (Count One); 18 U.S.C. § 371 – Conspiracy (Count Three);

21 | and 18 U.S.C. § 666(a)(1)(B) – Federal Programs Bribery (Count Four).  This document contains the

22 | complete plea agreement between the United States Attorney's Office for the Eastern District of

23 | California (the "government") and the defendant regarding this case.  This plea agreement is limited to

24 | the United States Attorney's Office for the Eastern District of California and cannot bind any other

25 | federal, state, or local prosecuting, administrative, or regulatory authorities.

26 | **B.     Court Not a Party**

27 | The Court is not a party to this plea agreement.  Sentencing is a matter solely within the

28 | discretion of the Court, and the Court may take into consideration any and all facts and circumstances

PLEA AGREEMENT                                        1

1   concerning the criminal activities of defendant, including activities that may not have been charged in

2   the indictment.  The Court is under no obligation to accept any recommendations made by the

3   government, and the Court may in its discretion impose any sentence it deems appropriate up to and

4   including the statutory maximum stated in this plea agreement.

5       If the Court should impose any sentence up to the maximum established by the statute, the

6   defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all

7   of the obligations under this plea agreement.  The defendant understands that neither the prosecutor,

8   defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will

9   receive.

10              **II.    DEFENDANT'S OBLIGATIONS**

11      **A.    Guilty Plea**

12      The defendant will plead guilty to Count Four: 18 U.S.C. § 666(a)(1)(B) – Federal Programs

13  Bribery.  The defendant agrees that he is in fact guilty of this charge and that the facts set forth in the

14  Factual Basis For Plea attached hereto as Exhibit A are accurate.

15      The defendant agrees that this plea agreement will be filed with the Court and become a part of

16  the record of the case.  The defendant understands and agrees that he will not be allowed to withdraw his

17  plea should the Court not follow the government's sentencing recommendations.

18      The defendant agrees that the statements made by him in signing this Agreement, including the

19  factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by

20  the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a

21  guilty plea pursuant to this Agreement.  The defendant waives any rights under Rule 11(f) of the Federal

22  Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, to the extent that these

23  rules are inconsistent with this paragraph or with this Agreement generally.

24      **B.    Sentencing Recommendation**

25      The defendant and his counsel may recommend whatever sentence they deem appropriate.

26      **C.    Special Assessment**

27      The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering

28  a check or money order payable to the United States District Court to the United States Probation Office

1  immediately before the sentencing hearing.

2  **D.     Defendant's Violation of Plea Agreement or Withdrawal of Plea**

3       If the defendant, violates this plea agreement in any way, withdraws his plea, or tries to withdraw
4  his plea, this plea agreement is voidable at the option of the government.  The government will no longer
5  be bound by its representations to the defendant concerning the limits on criminal prosecution and
6  sentencing as set forth herein.  One way a defendant violates the plea agreement is to commit any crime
7  or provide any statement or testimony which proves to be knowingly false, misleading, or materially
8  incomplete.  Any post-plea conduct by a defendant constituting obstruction of justice will also be a
9  violation of the agreement.  The determination whether the defendant has violated the plea agreement
10 shall be decided under a probable cause standard.

11      If the defendant violates the plea agreement, withdraws his plea, or tries to withdraw his plea, the
12 government shall have the right: (1) to prosecute the defendant on any of the counts to which he pleaded
13 guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file
14 any new charges that would otherwise be barred by this plea agreement.  The defendant shall thereafter
15 be subject to prosecution for any federal criminal violation of which the government has knowledge,
16 including perjury, false statements, and obstruction of justice.  The decision to pursue any or all of these
17 options is solely in the discretion of the United States Attorney's Office.

18      By signing this plea agreement, the defendant agrees to waive any objections, motions, and
19 defenses that the defendant might have to the government's decision to exercise the options stated in the
20 previous paragraph.  Any prosecutions that are not time-barred by the applicable statute of limitations as
21 of the date of this plea agreement may be commenced in accordance with this paragraph,
22 notwithstanding the expiration of the statute of limitations between the signing of this plea agreement
23 and the commencement of any such prosecutions.  The defendant agrees not to raise any objections
24 based on the passage of time with respect to such counts including, but not limited to, any statutes of
25 limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth
26 Amendment to any counts that were not time-barred as of the date of this plea agreement.

27      In addition: (1) all statements made by the defendant to the government or other designated law
28 enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal,

PLEA AGREEMENT                                3

1  whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or

2  administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no

3  claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal

4  Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by

5  the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed.

6  By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

7  ### III.   THE GOVERNMENT'S OBLIGATIONS

8  ### A.   Dismissals

9  The government agrees to move, at the time of sentencing, to dismiss without prejudice the

10  remaining counts in the pending indictment.  The government also agrees not to reinstate any dismissed

11  count except if this agreement is voided as set forth herein, or as provided in II.D (Defendant's Violation

12  of Plea Agreement), VI.B (Guidelines Calculations), and VII.B (Waiver of Appeal) herein.

13  ### B.   Recommendations

14  #### 1.   Incarceration Range

15  The government will recommend that the defendant be sentenced to 18 months of imprisonment.

16  The government may recommend whatever it deems appropriate as to all other aspects of sentencing.

17  #### 2.   Acceptance of responsibility

18  The government will recommend a two-level reduction (if the offense level is less than 16) or a

19  three-level reduction (if the offense level reaches 16) in the computation of defendant's offense level if

20  he clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1.

21  This includes the defendant meeting with and assisting the probation officer in the preparation of the

22  pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in

23  conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the

24  preparation of the pre-sentence report or during the sentencing proceeding.

25  ### C.   Use of Information for Sentencing

26  The government is free to provide full and accurate information to the Court and the United

27  States Probation Office ("Probation"), including answering any inquiries made by the Court and/or

28  Probation, and rebutting any inaccurate statements or arguments by the defendant, his attorney,

PLEA AGREEMENT                                        4

1  Probation, or the Court.  The defendant also understands and agrees that nothing in this Plea Agreement

2  bars the government from defending on appeal or collateral review any sentence that the Court may

3  impose.

## IV.  ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following

elements of the offense(s) to which the defendant is pleading guilty:

As to Count Four, a violation of 18 U.S.C. § 666(a)(1)(B) – Federal Programs Bribery:

1. that the defendant is an agent of an organization or of a state, local or Indian Tribal government;

2. that the organization, government or agency receives benefits in excess of $10,000 in a one-year period pursuant to a Federal program involving a grant, a contract, a subsidy, a loan, a guarantee, insurance, or another form of Federal assistance;

3. that the defendant corruptly solicited or demanded for the benefit of any person, or accepted or agreed to accept anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency; and

4. that the thing (referenced above) had a value of $5,000 or more.

The defendant fully understands the nature and elements of the crimes charged in the indictment to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

## V.  MAXIMUM SENTENCE

### A.  Maximum penalty

The maximum sentence that the Court can impose is 10 years of incarceration, a fine of $100,000 or twice the amount obtained as a result of the violation, a three-year period of supervised release and a special assessment of $100.  By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct.  The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific counts to which the defendant is pleading guilty.  The defendant further agrees, as noted above, that he will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

PLEA AGREEMENT                                   5

1

## B.    Violations of Supervised Release

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to two years of additional imprisonment.

# VI.    SENTENCING DETERMINATION

## A.    Statutory Authority

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

## B.    Guideline Calculations

The government and the defendant agree that the following is their present best estimate of the sentencing guidelines variables. These estimates shall not be binding on the Court, the Probation Office, or the parties:

| | | |
|---|---|---|
| Base Offense Level: (public official) | +14 | § 2C1.1(a)(1) |
| Offense involved more than one bribe | +2 | § 2C1.1(b)(1) |
| Acceptance of Responsibility: | -3 | § 3E1.1(a) & (b) |

*Criminal History Category: I (subject to determination by Court)*

**Sentencing Range:**               **13/I = 12-18 months**

The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references, except that the government may move for a departure or adjustment based on

1 defendant's post-plea obstruction of justice (§3C1.1). Both parties agree not to move for, or argue in
2 support of, any departure from the Sentencing Guidelines under United States v. Booker, 543 U.S. 220
3 (2005).

4       The defendant is free to recommend to the Court whatever sentence he believes is appropriate
5 under 18 U.S.C. § 3553(a). The government will recommend a high-end sentence of 18 months.

6 **VII.    WAIVERS**

7     **A.    Waiver of Constitutional Rights**

8       The defendant understands that by pleading guilty he is waiving the following constitutional
9 rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to
10 be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to
11 testify on his behalf; (e) to confront and cross-examine witnesses against him; and (f) not to be
12 compelled to incriminate himself.

13     **B.    Waiver of Appeal and Collateral Attack**

14       The defendant understands that the law gives the defendant a right to appeal his guilty plea,
15 conviction, and sentence. The defendant agrees as part of his plea/pleas, however, to give up the right to
16 appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not
17 exceed 60 months. The defendant specifically gives up the right to appeal any order of restitution the
18 Court may impose.

19       Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if
20 one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the
21 statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant
22 understands that these circumstances occur infrequently and that in almost all cases this Agreement
23 constitutes a complete waiver of all appellate rights.

24       In addition, regardless of the sentence the defendant receives, the defendant also gives up any
25 right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any
26 aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

27       Notwithstanding the agreement in paragraph III.A (Dismissals) above that the government will
28 move to dismiss counts against the defendant, if the defendant ever attempts to vacate his plea, dismiss

1  the underlying charges, or modify or set aside his sentence on any of the counts to which he is pleading

2  guilty, the government shall have the rights set forth in paragraph II.D (Defendant's Violation of Plea

3  Agreement) herein.

4      **C.**    <u>**Waiver of Attorneys' Fees and Costs**</u>

5      The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-

6  119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the

7  investigation and prosecution of all charges in the above-captioned matter and of any related allegations

8  (including without limitation any charges to be dismissed pursuant to this plea agreement and any

9  charges previously dismissed).

10              **VIII.**    **ENTIRE PLEA AGREEMENT**

11      Other than this plea agreement, no agreement, understanding, promise, or condition between the

12  government and the defendant exists, nor will such agreement, understanding, promise, or condition

13  exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and

14  counsel for the United States.

15              **IX.**    **APPROVALS AND SIGNATURES**

16      **A.**    <u>**Defense Counsel**</u>

17      I have read this plea agreement and have discussed it fully with my client. The plea agreement

18  accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to

19  plead guilty as set forth in this plea agreement.

20
    Dated:   6/1/16

21                                                  MICHAEL BARRETTE

22                                                  Counsel for Defendant

23      **B.**    <u>**Defendant**</u>

24      I have read this plea agreement and carefully reviewed every part of it with my attorney. I

25  understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully

26  understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my

27  case. No other promises or inducements have been made to me, other than those contained in this plea

28  agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement.

1   Finally, I am satisfied with the representation of my attorney in this case.

2

3   Dated: _____06.01.2016_____         _____
                                               HARMINDER PHAGURA,

4                                               Defendant

5    **C.**    **Attorney for the United States**

6        I accept and agree to this plea agreement on behalf of the government.

7   Dated:  6/24/2016                    BENJAMIN B. WAGNER
                                            United States Attorney

8

9                              By: _____

10                                PAUL A. HEMESATH
                                Assistant United States Attorney

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLEA AGREEMENT                  9

1

**EXHIBIT "A"**
**Factual Basis for Plea**

2

3        If this matter proceeded to trial, the United States would establish the following facts beyond a
reasonable doubt:

4        A confidential informant (CI) reported to agents of Homeland Security Investigation (HSI) that
an investigative target (Target) had proposed the use of a police officer who could facilitate drug deals.
5   In further conversations with the target, the CI learned that the police officer might provide information
about the presence of local and federal law enforcement in particular areas of Sutter County, which
6   could assist the commission of a narcotics offense.

7        After that conversation, the Target returned to the CI proposing that: (2) the police officer would
suggest a particular area of Sutter County to conduct a drug transaction, (2) the police officer could help
8   him monitor communication on a particular time and day, and (3) the Target would alert the CI, through
information obtained through the police officer, if law enforcement was present.
9

10       On July 29, 2014, at approximately 5:29 pm, CI and the Target met in Yuba City, California, to
discuss the pending narcotics transaction. During this recorded conversation, the Target informed the CI
11   that he would be meeting his police contact after approximately 6:45 pm.

12       At approximately 6:58 pm, agents observed the Target inside a Yuba City Police Department
patrol car.  At the same time, CI received a text message from the Target's cell phone stating the
13   "weather looks good".  This was the prearranged coded message between CI and the Target meaning
that it was safe to conduct the narcotics transaction.

14       While maintaining surveillance of the Target in the patrol vehicle, at approximately 7:20pm, HSI
agents placed a phone call to the Yuba City Police Department dispatch unit with a message that HSI
15   was in the area conducting surveillance on suspects believed to be involved in narcotics trafficking.
Furthermore, HSI agents informed Yuba City Police Department Dispatch that HSI was investigating a
16   silver Chevy Traverse, and that HSI would be near the area of Tharp Road and Highway 20 driving an
unmarked silver Impala and blue Ford Explorer.
17

18       At approximately 7:26pm, the CI received text messages from the target's Telephone as follows
(among others):

19       "Some things happening nearby but seems ok"

20       "Hot"

21       "See ya. Chevy silver"

22       "Silver impala tail?"

23       During this text messages exchange, HSI observed a Yuba City Police Officer was standing
outside the patrol vehicle, and leaning into the car through the driver's side window.  The officer was the
24   defendant.

25       At approximately 7:41 pm, HSI observed the Yuba City Police Department patrol vehicle enter
into the empty parking lot of Sutter County College and drive through the parking lot to a dirt road
26   connecting the college to an orchard. The patrol vehicle continued down the dirt road through the
orchard. At one point, the vehicle stopped, backed up, and exited the dirt road into the college campus
27   parking lot. Surveillance units considered this activity to be unusual and indicative of counter
surveillance because the lot was vacant, and the route would provide clear line-of-sight to easily see
28   anyone attempting to follow the vehicle.

PLEA AGREEMENT                                    A-1

1    At approximately 7:37 pm, the CI attempted to contact the Target via text message to arrange to
2    pay him $2,000 for his and defendant's assistance. However, the Target did not respond to the CI's text
     messages. At approximately 8:21 pm, the following text message exchange between the two transpired:

3        8:21 pm: (TARGET) - "Had to turn it off. Im driving back. Where are u?"

4        8:22 pm: (CI) - "On way back. I scared the shit out of me. My guys r tripping there fine though"

5        8:23 pm: (CI) - "Why off? What's wrong"

6        8:24 pm: (TARGET) - "Will explain in person. Shit going near that place. Thought it was ur
7            boy"

         8:25 pm: (CI) - "Let me check again"
8
9        8:27 pm: (TARGET) - "Did they move to a different place? nearby street?"

         8:28 pm: (CI) - "There both fine"
10
11       8:29 pm: (TARGET) - "Ok good. See u when u get back"

12       8:30 pm: (CI- - "Ok don't scare me like that"

13       8:31 pm: (TARGET) - "Dude. I was scared myself"

14       8:32 pm: (CI) - "Let's change (phones) when we meet"

15       8:33 pm: (CI) - "How long u gone"

16       8:34 pm: (TARGET) - "Yes. See u Monday for lunch"

17       8:35 pm: (CI) - "K"

18       On August 12, 2014, the CI met with the TARGET in Yuba City to pay him $2,000 for his and
     the defendant's assistance in providing counter-surveillance/intelligence for the ruse narcotics
19   transaction as previously described in the aforementioned paragraphs. During the meet, the Target
     confirmed that officer (the defendant) assisting him had instructed him how to access the dispatch
20   information on the patrol car compute, was well as the meaning of a "code 5" (meaning other law
     enforcement was in the area) and told the Target that "I would tell your boy to be very careful, I don't
21   know if it's them or somebody else."

22       The Target further confirmed that he would give the defendant his share of the $2,000.

23       On later occasions, the CI and the Target agreed to conduct similar operations involving the
     defendant and information he provided.  Over the course of these operations, the CI paid a total of
24   $6,000 for the information and assistance provided by the Target and the defendant.

25       Defendant was an agent of an organization of state government (the Yuba City Police
     Department).  The Yuba City Police Department is an agency that receives benefits in excess of $10,000
26   in a one-year period pursuant to a Federal program involving a grant, a contract, a subsidy, a loan, a
     guarantee, insurance, or another form of Federal assistance.

27       Defendant knowingly and corruptly solicited accepted money from another person, intending to
     be influenced or rewarded in connection with any Yuba City Police Department business.  Defendant
28   exchanged sensitive, police-only information for money.  Such information had a value at least $6,000,

1  because that was the amount of money that was provided in exchange for such information. That
2  sensitive police-information was owned and under the care and custody of the Yuba City Police
   Department.

3

4  Dated: ___06 · 01 · 2016___

5                                      HARMINDER PHAGURA, Defendant

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLEA AGREEMENT                          A-3